## MONNIG DRY GOODS CO. v. KING et al.[*]
### (No. 2911.)

(Court of Civil Appeals of Texas. Texarkana.
April 15, 1924. Rehearing Denied
May 15, 1924.)

Principal and agent ⊆⟐23(1)—Evidence held to show that person making sale was agent of one having power of sale, and not of defendants sued for conversion.

Evidence *held* to show that person selling cotton in question acted as agent of lessor in possession with power of sale, and not as agent of other defendants sued on theory of conversion.

Appeal from Wood County Court; Ben F. Cathey, Judge.

Suit by S. B. Saxon against G. T. King, the Monnig Dry Goods Company, and others. A judgment for plaintiff in a justice's court was affirmed in substance on appeal to the county court, and defendants Dry Goods Company and Gibson appeal, but only defendant Dry Goods Company filed an assignment of errors or appeared in the Court of Civil Appeals. Judgment set aside as to defendant Dry Goods Company.

Edward T. Murphy, of Fort Worth, and Suiter & Wilkinson, of Winnsboro, for appellant.

---

⊆⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing overruled 263 S. W. 960.

M. D. Carlock and R. B. Howell, both of Winnsboro, and Connor & Ramey, of Sulphur Springs, for appellees.

WILLSON, C. J. Wes Turner rented a farm to G. T. King for the year 1920. King cultivated a part of the land, and his sons, H. C. King and E. J. King, cultivated parts of it. G. T. King and his son H. C. King by their promissory note dated December 31, 1919, undertook to pay S. B. Saxon on October 1, 1920, $125 and interest, and to secure the payment of the note gave Saxon a mortgage on an automobile and "fifteen acres of cotton [quoting] to be grown during the year 1920 on Wes Turner's farm." H. C. King grew three bales of cotton on the land, which he turned over to G T. King, who delivered same, together with five bales he himself grew on the land and three bales grown thereon by E. J. King, to Turner, for use in paying rent due Turner and for supplies he furnished G. T. King to enable him to make a crop. While Turner was holding the eleven bales of cotton for the purpose stated they were sold to Scott Gibson for $1,148.09, which was used as follows: $851.-51 to pay the amount due Turner as rent and for supplies, and $296.58 to pay a part of about $500, secured by a mortgage on the cotton, which G. T. King owed J. B. Roberts. This suit, as commenced in a justice court, was by S. B. Saxon against G. T. King, H. C. King, J. B. Roberts, Wes Turner, and Scott Gibson. It was to recover against G. T. King and H. C. King as the makers of the note and mortgage, and against the other parties as for a conversion of the cotton. At the instance of Scott Gibson the Monnig Dry Goods Company was made a party, and Gibson prayed for judgment over against it for any sum Saxon recovered of him. It seems that Saxon then amended his pleadings and sought judgment against the dry goods company also, on the theory that it had acted with Turner, Roberts, and Gibson in the conversion (as alleged) of the cotton. The trial in the justice's court resulted in a judgment in Saxon's favor against G. T. King and H. C. King for $126.79, the amount of the note, and foreclosing the lien of the mortgage made to secure it, in favor of Saxon against Scott Gibson and the Monnig Dry Goods Company for $139.25, "the amount [it was recited] of this judgment [presumably against the Kings] including costs to date," in favor of Gibson against the Monnig Dry Goods Company for any sum paid by him on the judgment, and in favor of Turner and Roberts for costs. So far as is shown to the contrary by anything in the record, the Monnig Dry Goods Company alone prosecuted an appeal to the county court. A trial de novo in that court, without a jury, resulted in a judgment substantially like the one rendered in the justice's court, the only difference being that it was in Saxon's favor

for $135.85 against the Kings, Gibson, and the dry goods company. Both the dry goods company and Scott Gibson prosecuted an appeal to this court from the judgment of the county court, but Gibson did not file an assignment of errors in that court, and has not appeared by brief or otherwise in this court.

Facts as follows appeared without dispute in the testimony: (1) That Roberts was indebted to the dry goods company (2) That one Kahn, employed by the company as an adjuster, was authorized to collect indebtedness due it. (3) That the actual negotiations with Gibson resulting in the sale of the cotton to him were, with the consent of Turner, conducted by Roberts and Kahn. (4) That Roberts turned over to Kahn as the agent of the dry goods company, to be applied on his (Roberts') indebtedness to said company, $286.58 of the $296.58 paid to him of the proceeds of the sale of the cotton. Roberts testified:

"I invited Mr. Kahn down to help me sell this cotton. We went to Pickton and saw Mr. Turner, and I told him to let's sell the King cotton. Mr. Turner told me to sell it. Mr. Kahn and I then went to see Scott Gibson, and Kahn tried to sell the same to Mr. Gibson. I told Mr. Gibson that I owed him $10 and that if he would buy the cotton that I would pay him what I owed him. Mr. Kahn then closed out with Mr. Gibson."

Presumably it was on the undisputed facts stated and testimony set out above, and other testimony like it, that the trial court found that Kahn sold the cotton to Gibson. We say presumably because there is nothing else in the record to which the finding can be referred. The court evidently meant by his finding that Kahn acted in his capacity as adjuster for the dry goods company when he sold the cotton, and that that company was bound by his act; otherwise he could not have concluded as he did that the dry goods company was liable as for a conversion of the property. As we construe the facts and testimony specified they not only did not warrant the finding, but established conclusively that if Kahn sold the cotton he sold it as the agent of Turner, and not as the agent of the dry goods company Turner, the landlord, was in possession of the property as a lienor (Forrest v. Durnell, 86 Tex. 647, 26 S. W. 481; Edwards v. Anderson [Tex. Civ. App.] 82 S. W. 659; Trout v. McQueen [Tex. Civ. App.] 62 S. W. 928; Horton v. Lee [Tex. Civ. App.] 180 S. W. 1169), with authority from G. T. King, his tenant, to sell it. Having such possession and authority, Turner was the only person who had a right to sell or to authorize any one else to sell the cotton. And, having such possession and authority, Turner in selling the cotton would not be guilty, nor would any one acting for him in selling it be guilty, of a conversion. If Turner in

selling the cotton violated any duty he owed in the matter it was in turning over the $296.58 remaining of the proceeds of the sale after the debt' due him was satisfied to Roberts instead of to Saxon or G. T. King or H. C. and E. J. King. As neither Saxon nor any of the Kings are complaining here of his conduct in that respect, we need not determine whether he violated a duty he owed one or more of them or not.

The judgment so far as it was against the dry goods company was not warranted by the testimony. It will be set aside in that respect, and judgment will be here rendered that neither Saxon nor Gibson take anything by his suit against that company. The judgment of the county court will not be otherwise disturbed.